UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASULTY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  Case No. 4:23-cv-01440-SEP ) |
| LEVI C. GRAMLISCH, et al., | ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

Before the Court are Defendants James P. Kinsey, Sr., and Minors J.P.K., JR., D.K, and B.N.'s ("the Kinsey Defendants") Motion for Judgment on the Pleadings, Doc. [69]; Plaintiff's Motion for Default Judgment, Doc. [83]; Plaintiff's Motion for Summary Judgment, Doc. [75]; and Defendant Christopher Burke's Motion for Partial Summary Judgment, Doc. [100]. For the reasons set forth below, the Kinsey Defendants' motion is granted, Plaintiff's motions are denied, and Defendant Burke's motion is granted.

### FACTS AND BACKGROUND[1]

Plaintiff brings this declaratory action seeking to absolve itself of its duty to defend and duty to indemnify Defendant Levi C. Gramlisch in two wrongful death lawsuits. Doc. [1] ¶¶ 1, 20-22. Both lawsuits allege that Defendant Gramlisch operated his vehicle in a negligent manner resulting in a collision that caused the death of two individuals. *See* Docs. [1-3] ("Maynor Lawsuit"); [70-1] ("Kinsey Lawsuit"). According to the underlying lawsuits, at the time of the accident, Gramlisch was driving a 2004 Chevrolet truck ("Vehicle") owned by Gershenson Construction Company. Docs. [1-3] ¶ 6; [70-1] ¶ 6. The Kinsey Lawsuit alleges that, at all relevant times, Gramlisch was (1) "an agent and/or employee of Gershenson and was working in the course and scope of his employment and/or agency," and (2) "operating the vehicle with the direct and/or constructive permission of [Gershenson and his supervisor and foreman, Christopher] Burke." Doc. [69-1] ¶¶ 1, 3, 12, 13, 18. The Maynor Lawsuit alleges that, at all relevant times, Gramlisch was (1) "an agent and/or employee of [Defendant Gershenson

---

[1] For purposes of the motion for judgment on the pleadings, the Court takes the factual allegations in the Complaint, Doc. [1], to be true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

1

Construction Co., Inc.] and was working in the course and scope of his employment and/or agency," and (2) "Gershenson, by and through its agents and employees, gave Gramlisch express or implied permission to operate its 2004 Chevrolet truck." Doc. [1-4] at 2 ¶ 5, 6 ¶ 5.

At the time of the accident, Gershenson had a commercial liability policy of insurance ("Primary Policy"). Doc. [1] ¶ 28. The policy was issued by Plaintiff and provides in relevant part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> . . .
>
> The following are "insureds":
>
> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> > (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered auto you own.
> >
> > (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
> >
> > (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
> >
> > (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
> >
> > (5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.
>
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Doc. [1-5] at 21, 22.

At the time of the accident, Plaintiff also had a commercial excess follow form policy ("Excess Policy"). Doc. [1] ¶ 30. The "Coverage A – Excess Follow-Form Liability" section of the Excess Policy provides in relevant part:

1. We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage A of this insurance applies, provided that the "underlying insurance" would apply to such damages . . . .

2. Coverage A of this insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance.

Doc. [1-6] at 8.  With respect to Coverage A under the Excess Policy, the following persons and organizations qualify as insureds:

1. The Named Insured shown in the Declarations; and

2. Any other person or organization qualifying as an insured in the "underlying insurance" . . . .

*Id*. at 11.  The "Coverage B – Umbrella Liability" section under the Excess Policy provides coverage to the following:

1. We will pay on behalf of the insured those sums in excess of the "self-insured retention" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which Coverage B of this insurance applies.

*Id*. at 9.  Each of the following is an insured under Coverage B:

d. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business . . . .

*Id*. at 12.

Plaintiff claims that it has no duty to defend or indemnify under the Primary Policy because Defendant Gramlisch was not an "insured" under the Primary Policy as Gramlisch did not operate the Vehicle with permission from Defendant Gershenson.  Doc. [1] ¶¶ 39-41. Plaintiff also claims that it has no duty to defend or indemnify under the Excess Policy because Defendant Gramlisch was not an "insured" under the Excess Policy as he neither operated the Vehicle with Gershenson's permission nor "operate[d] the Vehicle in the scope of employment or related to the performance of duties for Gershenson."  *Id*. ¶¶ 43-46.

The Kinsey Defendants move for judgment on the pleadings, while Plaintiff and Defendant Burke both move for summary judgment.  *See* Docs. [69], [75], [100].  Plaintiff also

3

filed a motion for default judgment against Defendant Gramlisch. Doc. [83]. The Court held a hearing on March 10, 2025. Following the hearing, the Court ordered supplemental briefing on two issues. *See* Docs. [108], [109], [110], [111], [112]. This Order follows.

## LEGAL STANDARD

### I. Motion for Default Judgment

Entry of default by the Clerk of Court pursuant to Federal Rule of Civil Procedure 55(a) is a prerequisite to the grant of a default judgment under Rule 55(b), but whether to grant default judgment is a separate question within the discretion of the Court. *Weitz Co., LLC v. MacKenzie House, LLC*, 665 F.3d 970, 977 (8th Cir. 2012). Pursuant to Federal Rule of Civil Procedure 55, default judgment is appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." After default has been entered, "the allegations of the complaint, except as to the amount of damages are taken as true." *Greater St. Louis Const. Laborers Welfare Fund v. AbatePro, Inc.*, 2018 WL 5849980, at *1 (E.D. Mo. Sept. 6, 2018) (quotation omitted); *see also Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). Before the Court may enter a default judgment setting forth the declaration a plaintiff seeks, it must be satisfied, on the basis of the sufficiency of the Complaint and the substantive merits of the plaintiff's claims, that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citation omitted).

"The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). But, where "'the findings and judgment regarding damages in the instant case are capable of being computed on the basis of facts of record ... the district court need not hold an evidentiary hearing on the issue of damages.'" *Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)). "The Court may rely on affidavits and documentary evidence to determine the appropriate sum for the default judgment." *Painters Dist. Council 2 v. Grau Contracting, Inc.*, 2012 WL 2848708, at *1 (E.D. Mo. July 11, 2012).

## II. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that after the pleadings are closed, a party may move for judgment on the pleadings. "Judgment on the pleadings should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citing *Lion Oil Co., Inc. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir. 1996)). A motion under Rule 12(c) is governed by the same standards as a motion under Rule 12(b)(6). *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n. 3 (8th Cir. 2010). When a party moves for judgment on the pleadings, the Court accepts as true "all well-pleaded material allegations of the pleadings of the opposing party[,]" *Nationwide Mut. Ins. Co. v. Harris Med. Assocs., LLC*, 973 F. Supp. 2d 1045, 1050-51 (E.D. Mo. 2013), even if it appears that "actual proof of those facts is improbable," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). But a court's obligation to accept the allegations contained in the non-moving party's pleading does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although legal conclusions can provide the framework for a pleading, the pleader must support them with factual allegations. *Id*. at 679. The Court reviews the plausibility of the claim or defense "as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010). "When considering a motion for judgment on the pleadings . . . the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp.*, 186 F.3d at 1079 (citations and quotation marks omitted).

## III. Motion for Summary Judgment

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted).  The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The evidence must be viewed "in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  "'If reasonable minds could differ as to the import of the evidence,' summary judgment is inappropriate." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986)).

## Discussion

### I. Motion for Default Judgment

Plaintiff filed this action on November 10, 2023.  Doc. [1].  The record reflects service of summons upon Defendant Gramlisch on January 4, 2024.  Doc. [29].  Gramlisch failed to file an answer or other responsive pleading within the time allowed by Rule 12 of the Federal Rules of Civil Procedure.  Plaintiff moved for a Clerk's Entry of Default against Gramlisch, which was granted.  *See* Doc. [49].  On October 18, 2024, Plaintiff filed a Motion for Default Judgment, Doc. [83].  Gramlisch has responded to neither the Entry of Default nor the Motion for Default Judgment.  The Kinsey Defendants and Defendant Burke oppose the Motion for Default Judgment, arguing that "the declarations sought would necessarily affect the claims and arguments the non-defaulting defendants may raise against Plaintiff."  Doc. [91] at 2-3.

"When co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment." *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004).  "Though

6

Plaintiff only moved for default judgment as to [Gramlisch], the declarations sought in Plaintiff's motion would necessarily affect the claims and arguments [the Kinsey Defendants and Defendant Burke have] raised against Plaintiff." *Atl. Cas. Ins. Co. v. St. Louis Auto Car Sales, LLC*, 2023 WL 2755245, at *1 (E.D. Mo. Apr. 3, 2023). The Court therefore denies without prejudice the Motion for Default Judgment "to avoid the possibility of inconsistent results in the case." *Id*.

II.  **Motion for Judgment on the Pleadings**

   **A. Allegations in the Kinsey Petition give rise to a claim potentially within the policy's coverage.**

Under Missouri law, the insurer's duty to defend "arises only when there is a potential or possible liability to pay based on the facts at the outset of the case." *Allen v. Continental Western Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014) (citation modified). "[T]he insurer's duty to defend arises only from potential coverage based on facts: (1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case." *Id*. at 553. "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." *Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005).

The Kinsey Defendants move for judgment on the pleadings, asserting that Plaintiff has a duty to defend because there is potential coverage based on the allegations in the Kinsey Petition that Gramlisch was operating the vehicle with Gershenson's permission and in the course and scope of his employment/agency. *See* Doc. [1-5] (Primary Policy defining "insured" to include "anyone else while using with your permission a covered 'auto' you own, hire or borrow . . ."). Plaintiff disagrees, arguing that the allegations in the Kinsey Petition establish that Gramlisch was not a permitted user of the Vehicle.[2]

The Kinsey Petition alleges, in relevant part:

1. Christopher Burke ("Burke") was an employee of Defendant Gershenson Construction Co., Inc. ("Gershenson") on July 12, 2022.

---

[2] Plaintiff raised this argument for the first time at oral argument after the parties had already briefed the pending motions. *See* Docs. [109], [110]. On the oral record, the Court told Defendants it would entertain an argument that Plaintiff waived this point by failing to mention it in its briefing. Because the Court finds for Defendants on this issue, the Court does not reach whether Plaintiff waived the argument.

7

2. Defendant Levi Gramlisch ("Gramlisch") was an employee of Gershenson on July 12, 2022.

3. Burke was Gramlisch's supervisor and foreman at Gershenson on July 12, 2022.

4. Prior to July 12, 2022, a 2004 Chevrolet truck, owned by Gershenson, was assigned by Gershenson to Gershenson's employee Burke.

5. Prior to July 12, 2022, a 2004 Chevrolet truck, owned by Gershenson, was assigned by Gershenson to Gershenson's employee Burke with the approval of Gershenson President, Mike Gershenson.

6. The 2004 Chevrolet truck, owned by Gershenson and assigned by Gershenson to Gershenson's employee Burke, was garaged in the State of Illinois on July 12, 2022, specifically at Burke's residence.

7. On July 12, 2022, Burke contacted Gramlisch and ordered Gramlisch to take possession of the 2004 Chevrolet truck, owned by Gershenson, then parked at Burke's residence.

8. On July 12, 2022, Gramlisch drove the 2004 Chevrolet truck, owned by Gershenson, to a jobsite under the control of Gershenson in the State of Missouri.

9. On July 12, 2022[,] Gershenson President, Mike Gershenson, ordered Gramlisch to return the 2004 Chevrolet truck, owned by Gershenson, to Burke's residence in the State of Illinois.

10. On July 12, 2022[,] Burke, as Gramlisch's foreman and supervisor, ordered Gramlisch to drive the 2004 Chevrolet truck, owned by Gershenson, from Burke's residence in the State of Illinois to a location somewhere in the State of Missouri.

11. On or about July 12, 2022, at approximately 9:43 p.m., the 2004 Chevrolet truck, owned by Gershenson and operated by Gramlisch, collided with a 2020 Chevrolet Equinox being driven by Mary T. Kinsely.

12. At all times relevant, Gramlisch was operating the vehicle with the direct and/or constructive permission of Burke.

13. At all times relevant, Gramlisch was operating the vehicle with the direct and/or constructive permission of Defendant Gershenson Construction Co., Inc.

Doc. [70-1].[3]

---

[3] These allegations come from the Amended Petition in the Kinsey Lawsuit. Plaintiff suggests that it may not be proper for the Court to consider the Amended Petition. *See* Doc. [71] at 7. The Court notes, therefore, that its conclusion would be the same based on the Petition, which also alleged that Gramlisch was driving the Vehicle with Gershenson's permission. *See* Doc. [1-4] at 2, 6, 18, 31.

According to Plaintiff, "the claims are about Defendant Gramlisch's subsequent conduct that substantially deviated from any alleged permission from the company's President and Owner," and "[t]here are no facts alleged in the underlying lawsuit from which to infer that Defendant Burke had authority to override the limited scope of use allegedly permitted by the President and Owner of the company." Doc. [109] at 2. Therefore, Plaintiff claims, Gramlisch was not a permitted user pursuant to Missouri's law regarding second permittees. *See Hawkeye-Sec. Ins. Co. v. Bunch*, 643 F.3d 646, 650 (8th Cir. 2011) ("Under Missouri law a second permittee must obtain express or implied permission to use the vehicle from the named insured. Coverage may in some instances extend to second permittees if the first permittee had unfettered control over the car and the second permittee uses the car in a manner impliedly permitted by the owner." (citation omitted)).

The Kinsey Defendants respond that "Paragraph #9 does not state that Gramlisch's permission to operate the truck ended when he returned the truck to Burke's home[,]" and "[b]y reading it in isolation, Plaintiff is asking this court to make an inappropriate assumption." Doc. [111] at 3. The Court agrees. Paragraph 9 is not in conflict with the Kinsey Petition's allegations that Gramlisch was driving with Gershenson's permission. Reading the Complaint as a whole, the Court finds that the allegations "give rise to a claim potentially within the policy's coverage." *Allen v. Bryers*, 512 S.W.3d 17, 31 (Mo. 2016).

### B. Plaintiff points to no facts known or reasonably ascertainable by Plaintiff at the outset of the Kinsey Lawsuit to negate its duty to defend.

Plaintiff also argues that the Kinsey Defendants' motion should be denied because an insurer has no duty to defend when there is no potential for coverage based on actual facts known to the insurer, even if such facts conflict with the allegations in the underlying complaint. Plaintiff alleges in *this* lawsuit that, at the time of the incident, Gramlisch was not driving "in the scope of employment with Gershenson or in performance of duties related to the conduct of Gershenson's business," and Gramlisch was not driving with "the knowledge or authorization of Gershenson." Doc. [1] ¶¶ 15, 16. Plaintiff apparently wants the Court to accept those factual allegations as true, as required on consideration of a motion for judgment on the pleadings, and then find that they operate to negate any duty to defend in the Kinsey Lawsuit. That argument contorts Missouri law, which considers facts known to the insurer relevant to the duty to the defend a particular lawsuit only to the extent they are known or are reasonably apparent to the

9

insurer *at the outset of the case*.[4]  *See Allen*, 436 S.W.3d at 553; *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. Ct. App. 2007) ("Thus, in reviewing whether a genuine issue of material fact exists regarding whether Burlington owed Trainwreck a duty to defend, we do not rely upon 'facts that emerged during discovery' and will examine only those facts known to or reasonably ascertainable by Burlington at the time Ms. Neff filed her Petition." (citing *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 969 (8th Cir. 1999))); *State ex rel. Inter–State Oil Co. v. Bland*, 354 Mo. 622, 190 S.W.2d 227, 229 (1945) ("[A]ctual facts are those facts which were known, or should have been reasonably apparent at the commencement of the suit and not the proof made therein or the final result reached.").[5]  Plaintiff does not claim

---

[4] At oral argument, the parties vigorously disputed whether actual facts known to the insurer can ever negate a duty to defend, and the Court requested supplemental briefing on the issue. *See* Doc. [108].  In their briefing, the Kinsey Defendants concede that there is a "small subset of cases in which the courts held there was no duty to defend where there was zero possibility of coverage under the policy regardless of the allegations in the underlying complaint."  Doc. [112] at 1-2; *see, e.g.*, *Hawkeye-Sec. Ins. Co. v. Iowa Nat. Mut. Ins. Co.*, 567 S.W.2d 719 (Mo. App. 1978); *Travelers Ins. Co. v. Cole*, 631 S.W.2d 661 (Mo. Ct. App. 1982).  For purposes of this Memorandum & Order, the Court assumes *arguendo* that facts known to the insurer at the outset of the case can, under some circumstances, negate a duty to defend.

[5] In its memorandum in opposition, Plaintiff cites *Allen v. Continental Western Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014), and *Brand v. Kansas City Gastroenterology & Hepatology, LLC*, 414 S.W.3d 546, 555 (Mo. Ct. App. 2013), for the following statement of law:  "The duty to defend in response to an amended pleading considers the facts: (1) alleged in the amended pleading; (2) known to the insurer *at the time of the amended pleading*; or (3) that are reasonably apparent to the insurer *at the time of the amended pleading*."  Doc. [71] at 7 (emphases added).  Plaintiff appears to have modified *Allen*'s articulation of Missouri law based on *Brand*'s statement that "an insurer's duty to defend is examined at the outset of the case, *or upon notice of an amended pleading*, based upon facts known or reasonably ascertained through a review of pleadings and reasonable investigation."  *Brand*, 414 S.W.3d at 555 (emphasis added).  That argument misunderstands *Brand*.

Under Missouri law, an insurer's duty to defend can be triggered by allegations in an amended petition, even if the allegations in the original petition did not bring the case within the coverage of the policy.  *See Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 398 (Mo. Ct. App. 2007) ("The injured party may add additional claims *en route* to trial and, once the injured party has provided the insurer notice of these claims, the insurer will owe a duty to defend when the new claim potentially or possibly comes within the policy's coverage."); *Trainwreck West Inc.*, 235 S.W.3d at 39 n.3 ("An insurer must be given notice of an amended pleading which would impose a duty to defend, and a failure to give notice will relieve the insurer of liability under the policy." (quoting 7C John A. Appleman, *Insurance Law and Practice* (Berdal ed. 1979) § 4683)).  The phrase Plaintiff lifts from *Brand* is readily comprehensible as an acknowledgment of that principle.  Plaintiff's use of the phrase to suggest that facts apparent to the insurer at the time of an *amended* petition can *negate* a duty to defend flies in the face of the well-established rule that a duty to defend does not depend on facts that emerge during discovery—a rule that *Brand* itself emphasizes.  *See Brand*, 414 S.W.3d at 553 ("[A]ctual facts are 'those facts which were known, or should have been reasonably apparent *at the commencement of the suit and not the proof made therein or the final result reached*.'" (quoting *Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo. 1968))); *see*

to have known Gramlisch was not a permitted user at the outset of the Kinsey Lawsuit, and the Court finds no basis for an inference that Plaintiff did have such knowledge. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010) ("[A] plaintiff is the master of his own complaint, and [the Court is] not required, even at this preliminary stage, to draw unreasonable inferences . . . ."); *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (courts are not required "to assume facts that are not alleged"). Because the allegations in the Kinsey Petition "give rise to a potential claim within coverage," and Plaintiff has not alleged that it had knowledge of facts at the outset of the Kinsey Lawsuit that negated its duty to defend, the Court grants the Kinsey Defendants' motion for judgment on the pleadings.

### C. Plaintiff owes a duty to defend Gramlisch in the Kinsey Lawsuit.

Plaintiff argues that, even if the Court grants the motion for judgment on the pleadings, the Court may not declare that Plaintiff has a duty to defend because the Kinsey Defendants lack standing to seek such a declaration. Doc. [71] at 5. Under Missouri law, third-party claimants, such as the Kinsey Defendants, cannot "pursue a direct action against an insurance company until [they] obtain[ ] a judgment against the insureds." *Allstate Vehicle and Prop. Ins. Co. v. Hill*, 2022 WL 19766499, at *2 (W.D. Mo. Nov. 30, 2022) (denying tort-claimant's motion to amend his answer to include affirmative defenses of waiver and estoppel as futile because tort-claimant had "not supplied the Court with any evidence or documentation that he obtained a judgment against Defendants"). Thus, for example, in *Western Heritage Insurance Company v. Asphalt Wizards*, 795 F.3d 832, 836 (8th Cir. 2015), the Eighth Circuit affirmed the district court's dismissal of the tort-claimant's counterclaim seeking a declaration that the tortfeasor's insurance company had a duty to indemnify the insured, while acknowledging that the dismissal created "a potentially odd result"; that is, the insurance company sued the tort-claimant "concerning the meaning of the insurance policies, yet [the tort-claimant] lack[ed] standing . . . to assert counterclaims about the same subject." *Id*.

Here, the Kinsey Defendants have not filed a counterclaim; they have moved for judgment on the pleadings. Plaintiff has not cited, nor has the Court found, any case law prohibiting a court from finding that an insurance company *does* owe a duty to defend in

---

*also, e.g.*, *Trainwreck West Inc.*, 235 S.W.3d at 39; *but see Hailmann v. Allstate Ins. Co.*, 2008 WL 1820857 (W.D. Mo. Apr. 21, 2008) (apparently relying on testimony developed in the underlying tort case to find that the insurer did not have a duty to defend).

11

response to a meritorious dispositive motion filed in the insurance company's lawsuit seeking a declaration that it *does not* owe such a duty.  In fact, in *Western Heritage* itself, the district court held that the "[insurance company] owe[d] a duty to defend the underlying lawsuit" in granting the tort-claimant's motion for summary judgment.  *Western Heritage Ins. Co. v. Love*, 24 F. Supp. 3d 866, 882 (W.D. Mo. 2014).  There, the Honorable David Gregory Kays noted that, "[a]lthough [the tort-claimant] lacks standing to bring any counterclaims in this case, as a defendant in this lawsuit, it may still move for summary judgment on [the insurance company's] affirmative claim that it owes no duty to defend."  *Id*. (citing Fed. R. Civ. P. 56 (a)).  Western Heritage Insurance Company did not appeal the district court's holding as to its duty to defend, but the Court finds no fault with Judge Kays's reasoning, especially given the absence of any counter-authority.  The Court therefore finds that Plaintiff has a duty to defend Gramlisch in the Kinsey Lawsuit and grants the Kinsey Defendants' motion for judgment on the pleadings in part.[6]

### III.   Motion for Summary Judgment

Plaintiff moves for summary judgment on its duty to defend and duty to indemnify, and Defendant Burke moves for partial summary judgment on Plaintiff's duty to defend Gramlisch in the Maynor Lawsuit.  In light of the Court's ruling on the Kinsey Defendants' motion for judgment on the pleadings, Plaintiff's motion for summary judgment is denied as it pertains to its duty to defend Gramlisch in the Kinsey Lawsuit.  The Court considers summary judgment only as to the duty to defend Gramlisch in the Maynor Lawsuit and the duty to indemnify.

**A. Plaintiff owes a duty to defend Gramlisch in the Maynor Lawsuit.**

Plaintiff moves for summary judgment on its duty to defend Gramlisch in the Maynor Lawsuit, asserting that the evidence confirms that "Gramlisch was never given permission by GCC to use the Vehicle for personal use and that any use by Gramlisch and Maynor (who was not a GCC employee) at 9:43 p.m. on July 12, 2022, was without GCC's permission and beyond the scope of Gramlisch's employment."  Doc. [103] at 5.  In making this argument, Plaintiff again relies on case law stating that an insurer has no duty to defend when there is no potential

---

[6] Kinsey Defendants' Motion for Judgment on the Pleadings also asks the Court to find that Plaintiff has a duty to defend Gershenson Construction in the Kinsey Lawsuit.  *See* Doc. [70] at 8.  As Plaintiff seeks a declaration only regarding its duty to defend Gramlisch, the Court can grant judgment on the pleadings only as to that claim.  It therefore makes no finding as to Plaintiff's duty to defend Gershenson Construction in the Kinsey Lawsuit.

12

for coverage based on actual facts known to the insurer, even if such facts conflict with the allegations in the underlying complaint.

As discussed in Section II, actual facts are relevant to the duty to the defend analysis only to the extent such facts are known or reasonably ascertainable by the insurer at the outset of the case. The evidence Plaintiff relies on comes from a deposition taken approximately nine months after the Maynor suit was filed. *See* Doc. [77-1]. Because Plaintiff does not claim to have known those facts when the Maynor case was filed, the Court will not rely on them in determining whether Plaintiff has a duty to defend. *See Trainwreck West Inc.*, 235 S.W.3d at 39; *see also Allen*, 436 S.W.3d at 553 (citing *Trainwreck* for the proposition that "facts adduced solely from deposition testimony are not reasonably apparent at the outset of the case and do not give rise to a duty to defend").[7]

Without evidence that there was no possibility of coverage based on facts known to or reasonably ascertainable by Plaintiff at the time the Maynor Petition was filed, Plaintiff must rely on the allegations in the Maynor Petition to "extricate itself from [its] duty to defend." *Truck Ins. Exchange*, 162 S.W.3d at 79. But Plaintiff makes no argument in response to Defendant Burke's claim that the allegations in the Maynor Petition—that Gramlisch was driving the Vehicle with Gershenson's permission and within the course and scope of his employment—give rise to potential claims within the policy's coverage. And on the Court's review of the Maynor

---

[7] Plaintiff also cites the Clerk's Entry of Default entered against Gramlisch, arguing that "Gramlisch has admitted by default that he was never authorized by GCC to drive the Vehicle, he consumed alcohol to the point of intoxication after his workday ended on July 12, 2022, he then drove the Vehicle without knowledge or authorization of GCC, and he did not drive the Vehicle in the course and scope of employment with GCC or in the performance of duties related to GCC's business or otherwise with GCC's permission." Doc. [76] at 3; *see also* Doc. [103] at 5. "These admissions by default are dispositive," Plaintiff maintains, "because they establish that Gramlisch was not a permissive user of the Vehicle and was operating the Vehicle outside the scope of his employment with GCC . . . [and] therefore cannot qualify as an 'insured.'" Doc. [76] at 3-4.

Plaintiff misstates the law. A default judgment "*binds the party facing the default* as having admitted all of the well pleaded allegations in the plaintiff's complaint." *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (emphasis added). "In the same cause, a fact, not controverted by one party, who does not appear, and therefore, as to him taken for confessed, ought not, on that implied admission, to be brought to bear upon another who does appear, does controvert, and does disprove it." *Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432–33 (8th Cir. 1992). Thus, the facts in Plaintiff's Complaint are deemed admitted against Gramlisch but not against the Defendants who are not in default.

Petition, any such argument would be futile.  Plaintiff's motion for summary judgment as to its duty to defend Gramlisch in the Maynor Lawsuit is denied.

Defendant Burke moves for partial summary judgment on Plaintiff's duty to defend, arguing that the allegations in the Maynor Petition give rise to potential claims within the policy's coverage.  Plaintiff responds with the same arguments it made in support of its motion for summary judgment.  Because the allegations in the Maynor Petition "give rise to a potential claim within coverage," and Plaintiff has not shown that it had knowledge of facts at the outset of the Maynor Lawsuit that negated its duty to defend, Defendant Burke's motion is granted.[8]  Plaintiff has a duty to defend Gramlisch in the Maynor Lawsuit.

### B. Plaintiff is not entitled to summary judgment as to its duty to indemnify Gramlisch in the Maynor and Kinsey Lawsuits.

Plaintiff also moves for summary judgment on its duty to indemnify, arguing that there can be no duty to indemnify if there is no duty to defend.  *Am. States Ins. Co. v. Herman C. Kempker Const. Co., Inc.*, 71 S.W.3d 232, 236 (Mo. Ct. App. 2002) ("Where there is no duty to defend, there is no duty to indemnify.").  Plaintiff makes no other argument.  As the Court has found that Plaintiff does have a duty to defend Gramlisch in both lawsuits, Plaintiff's motion for summary judgment on its duty to indemnify is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment, Doc. [83], and Plaintiff's Motion for Summary Judgment, Doc. [75], are **DENIED**.

**IT IS FURTHER ORDERED** that the Kinsey Defendants' Motion for Judgment on the Pleadings, Doc. [69], is **GRANTED**.  Judgment on the pleadings "accrues to the benefit" of Defendant Levi C. Gramlisch.  *See Bastien v. R. Rowland & Co.*, 631 F. Supp. 1554, 1561 (E.D.Mo. 1986), *aff'd*, 815 F.2d 713 (8th Cir. 1987); *Angelo Iafrate Const.*, 370 F.3d at 722 ("To avoid [ ] inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party.").  Plaintiff has a duty to defend Defendant Levi C. Gramlisch in the Kinsey Lawsuit.

---

[8] Plaintiff also argues again that the Court cannot find that Plaintiff has a duty to defend because Defendant Burke lacks standing to seek such a declaration.  For the reasons set forth in Section II, the Court again rejects that argument.

**IT IS FURTHER ORDERED** that Defendant Burke's Motion for Partial Summary Judgment, Doc. [100], is **GRANTED**. Summary judgment "accrues to the benefit" of Defendant Levi C. Gramlisch. *See Bastien*, 631 F. Supp. at 1561, *aff'd*, 815 F.2d at 713; *Angelo Iafrate Const.*, 370 F.3d at 722 ("To avoid [ ] inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party."). Plaintiff has a duty to defend Defendant Levi C. Gramlisch in the Maynor Lawsuit.

**IT IS FINALLY ORDERED** that no later than August 29, 2025, Plaintiff must show cause why the Court should not enter judgment in favor of Defendant Gershenson Construction. *See Chrysler Credit Corp. v. Cathey*, 977 F.2d 447, 449 (8th Cir. 1992) (affirming *sua sponte* grant of summary judgment in favor of cross-defendants who did not move for summary judgment because cross-defendants' "right to judgment turned on the same issue as [the plaintiff's] right to judgment").

Dated this 8th day of August, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE